UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JULIE SUN

      Plaintiff/Counter-Defendant,        Case No: 16-11339
                                          Honorable Victoria A. Roberts

v.

UNITED OF OMAHA LIFE INSURANCE
COMPANY

      Defendant/Counter-Plaintiff.
_____/

## ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [Doc. #17] AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DOC. #18]

**I.   INTRODUCTION**

Julia Sun ("Sun") filed suit against United Omaha Life Insurance Company ("United") to enforce her long-term disability insurance policy. Sun says United violated the Employee Retirement Income Security Act of 1975 ("ERISA") by wrongfully terminating her long-term disability ("LTD") benefits. United says Sun has not established by a preponderance of the evidence that she is "disabled." The parties filed cross-motions for summary judgment.

Sun requests that the Court: 1) reverse United's decision to terminate her benefits; and (2) declare her disabled under the policy.

United asks the Court to affirm the administrator's decision and require Sun to reimburse it $25,476.67 for Social Security benefits she received from 2011 to 2013.

The Court **GRANTS** Sun's motion for summary judgment and **DENIES IN PART AND GRANTS IN PART** United's motion for summary judgment.

1

## II.   BACKGROUND

### a.  Administrative Record

From 2002 until December 28, 2010, Sun worked for HR Staffing Team as a registered nurse who cared for quadriplegic patients. Her position held a strength demand of "medium" (i.e. 50 pounds maximum lifting with frequent lift/carry up to 25 pounds). Her major job duties included caring, bathing, feeding, dressing, administering medication, and assessing patients' condition/illness. Sun used a hoyer lift to move patients, which required pushing, pulling, and lifting approximately 30 pounds. She also drove on a daily basis and took patients to various appointments and on personal errands. [Doc. #15-5, Pg ID 698-701].

During her employment, Sun participated in HR Staffing's ERISA qualified benefit plan. United issued the Group Long Term Disability Insurance Policy ("Policy") to HR Staffing. Under the Policy, United agreed to pay LTD benefits subject to the terms and conditions of the Policy. HR Staffing self-insured a short-term disability ("STD") benefits program for eligible employees; it retained United to review claims under the Policy.

As part of her employment, Sun agreed to:

> repay the Company [i.e., United], in a lump sum, all monthly and/or weekly benefits that have been paid to me, and which exceed the amount I was entitled to under the terms of the Policy, as a result of receipt of Other Benefits. I will make\ this repayment within 30 days from the date on which Other Benefits are received.

[Doc. #15-5, Pg ID 599].

In the event of Disability, the Policy required Sun to apply for "other income" benefits for which she may be eligible, such as Social Security Disability ("SSD") benefits. The Social Security Administration ("SSA") awarded Sun SSD full benefits in

June 2013 and back-pay from June 2011 through May 2013. That award is the subject of United's counterclaim against Sun to recoup SSD benefits awarded to Sun during the same time she received LTD benefits from United.

Sun injured her foot in December 2010. Because of her injury, Sun could not perform her job duties as a registered nurse, and HR Staffing said it could not modify Sun's job duties. [Doc. #15-6, Pg ID 847].

At her doctor's recommendation, Sun took time off work.  However, her foot never healed properly, and she did not return to work. Sun's last day of employment was December 28, 2010. United provided Sun STD benefits from January 2011-April 2011.

Under the terms of the Policy, a participant is entitled to receive monthly disability benefits if she is "disabled." The Policy defines disabled:

> Disability and Disabled means that because of an Injury or Sickness, a  significant change  in  Your  mental  or   physical functional capacity has occurred in which You are:
>
>> (a) prevented from performing at least one of the Material Duties of Your Regular Occupation on a part-time or full-time basis; and
>>
>> (b) unable to generate Current Earnings which exceed 80% of Your Basic Monthly Earnings due to  that same Injury or Sickness.
>
> After a Monthly Benefit has been paid for 2 years, Disability and Disabled mean You are unable to perform all of the Material Duties of any Gainful Occupation. Disability  is determined relative to Your ability or inability  to work. It is not determined by the availability of a suitable position with Your employer.

[Doc. #15-1, Pg ID 119-20 emphasis omitted)]. The Policy defines "Gainful Occupation" as:

an occupation, for which You are reasonably fitted by training, education, or experience, is or can be expected to provide You with Current Earnings at least equal to 60% of Basic Monthly Earnings within 12 months of Your return to work.

[*Id.*, Pg ID 120].

On January 18, 2011, Dr. Anthony Benenati, D.P.M, a podiatrist, diagnosed Sun with "Plantar Fasciitis and possible Peroneal Longus tear," with the symptom of pain and first appearing on December 28, 2010. He found Sun could return to work full-time in 1-3 months. [Doc. #15-6, Pg ID 848-49]. Dr. Benenati sent United medical records to confirm his diagnosis.

In April 2011, United spoke with Sun. On the call "she indicated disability due to a diagnosis of plantar fasciitis; the wearing of a walking cast; the abstention from surgery due to having lupus and the medication that she takes for the lupus; the exacerbation of the plantar fasciitis symptoms if she walks without the walking cast; her belief she will have to live with pain for the rest of her life; her ability to do the activities of daily life ("ADL's"); her continuing to drive on a daily basis; her hope to return to work April 24, 2011." [Doc. #20, Pg ID 1047, citing Doc. #15-5, Pg ID 698-701].

On April 6, 2011, Sun began to receive LTD benefits. Supporting her claim for LTD benefits were medical reports from Dr. Benenati.

Dr. Benenati's July 12, 2011 report concluded Sun had not achieved maximum medical improvement; he said fundamental changes in her medical condition were expected in 1-2 months. [*Id.,* Pg ID 637]. In a November 2011 report, Dr. Benenati indicated that Sun had not achieved maximum medical improvement, but noted that fundamental changes in her condition could be expected in 5-6 months, with the medical prognosis for recovery being "good." [*Id.*, Pg ID 607].

4

On December 5, 2011, Dr. Benenati evaluated Sun's Peroneus Brevis Tendonitis – rupture or tear in the ankle – and found "improvement gained w/ infiltration of corticosteroid, 85% improvement, just a residual ache over the area. [Sun] states she has good and bad days and this is a bad day." [Doc. #15-4, Pg ID 544]. Sun told Dr. Benenati she took an experimental drug for lupus [*Id.*]. Dr. Benenati examined Sun and found no apparent distress, cardiovascular problem, or skin problems except for a 4 cm hyperkeratotic fissure on the left heel. He found normal lymphatic findings; good coordination and normal touch, pin, vibratory, and proprioception sensations; stable, normal gait; muscle strength 5/5 for all groups tested and normal muscle tone; and inspection and palpation of bones, joints, and muscles unremarkable other than a pain on palpation over the left peroneus brevis tendon. [*Id.*].

On February 1, 2012, Sun mailed an Education, Training and Work Experience form to United. [*Id.,* Pg ID 584-86]. In response to the last question on the form, "What is your employment goal," Sun wrote, "to Return to work as an RN in a non-patient care role." [*Id.,* Pg ID 585].

On July 9, 2012, United concluded Sun was not disabled and denied LTD benefits. Sun appealed United's decision and submitted additional evidence of disability.

On August 13, 2012, United reinstated Sun's LTD benefits. United decided to reinstate Sun's LTD benefits because it received a July 13, 2012, report and phone call from Dr. Benenati. From this information, United documented this: "[Sun has] a new medication (Benlysata) in an attempt to treat her Lupus, and from the information, and phone conversation she is unable to have surgery to fix her complication to her plantar faciitis exacerbated by her...fracture." [Doc. #15-3, Pg ID 401].

On September 10, 2012, Vocational Consultant Douglas Palmer issued his Transferable Skills Analysis. In the report he concluded Sun's skill level will not allow her to qualify for employment options, and that Sun would not qualify for a wage meeting or exceeding her identified gainful threshold unless her physical capacity improved from sedentary to at least light, or she augmented her skill level through additional training or education. [Doc. #15-3, Pg ID 392-95].

There were no medical reports between August and November 2012.

On November 19, 2012, United notified Sun that the definition of disabled changed from "prevented from performing at least one of the duties of your regular occupation," to "unable to perform all of the material duties of any gainful occupation." United asked Sun to provide medical documentation to prove entitlement to disability benefits under the Policy's new definition.

Sun continued to receive LTD benefits under the new definition and provided medical reports to United.

In a December 3, 2012 report, Dr. Benenati found Sun has tendonitis, with lupus being a secondary condition that delays healing; her condition worsened; and she achieved maximum improvement. [*Id.*, Pg ID 354-56]. Dr. Benenati listed various restrictions on Sun; he said she cannot sit, stand, or walk for longer than 1 hour in an 8-hour period, or 30 minutes at a time; cannot perform sedentary or light work on a sustained basis; cannot do repetitive movements with her arms, hands, feet, or legs; cannot climb ladders, kneel, crouch, stoop, crawl, or squat. He did say Sun can occasionally lift up to 10 pounds, climb stairs, reach overhead, reach forward, and bend. *Id.*

6

In a December 17, 2012 report, Dr. Andrew Sulich indicated a primary diagnosis of systematic lupus erythematoris, with no secondary conditions contributing to disability and with objective findings of "continued active disease primarily cutaneous supported by autoantibodies." [*Id.*, Pg ID 357-59]. Dr. Sulich found Sun did not achieve maximum medical improvement, noting that he expected fundamental changes in Sun's medical condition in more than six months. His medical prognosis for recovery was "improved function as course of treatment of Benlysta is continued & steroid decreased." [*Id.,* Pg ID 357].

Dr. Sulich's report lists various restrictions including chronic fatigue, joint pain, and insomnia; severe restrictions to exposure to cold, wet, heat or humidity, fumes, odors, dusts, mists, gases, chemicals, or unprotected heights; moderate restrictions to operating automotive equipment; and mild restriction to noise. [*Id.*, Pg ID 357-58].

Dr. Sulich filled out a Physical Capacities Checklist indicating that Sun cannot sit, stand, or walk for longer than 30 minutes at a time and one hour in a day in an 8-hour workday; cannot do repetitive movements with hands, arms, foot, or leg; can occasionally lift, carry, or push/pull up to 10 lbs.; occasionally climb stairs, balance, bend, reach forward, reach overhead, handle, finger; can never climb ladders, stoop, kneel, crouch, squat, or crawl. [*Id.*, Pg ID 358-59].

On January 4, 2013, Dr. Daniel Stachelski gave Sun a physical. He reported:

Continues to battle lupus. Continues to go to trials of medications with rheumatologist-Dr. Sulich. Recently had a new drug approved. Benlysta is the latest medication. So far, tolerating without any obvious problems. Too early to comment about its effectiveness.

Patient complains of ongoing severe fatigue. Feels that she has not slept well through the night for many years. Recently has developed a "system" of sleeping propped up in a chair. Not sure if she wakes up a lot

because of pain or because of the need to void or because of some problems related to sleep apnea. She does admit that she has some relatively significant chronic daytime fatigue.

Continues to smoke-although she feels that she has "cut down a lot." Has not been using albuterol very much if at all in the last couple of months. But does need a refill.

Continues to work hard on her weight. Believes that her weight was down to 250 pounds within the last couple of months. Realizes she's back up to about 275 pounds. Got down to about 250 pounds with exercise and diet. Had to stop exercising because of her exacerbation of foot pain. Had a couple corticosteroid injections from her foot specialist. Her pain is improving.

[Doc. #15-2, Pg ID 257-59].

On February 13, 2013, Vocational Consultant Rhonda Jellenik issued her Transferable Skills Analysis and Labor Market Survey, identifying available, relatively nearby jobs of a sedentary nature which Sun could perform that would "primarily fall within the gainful wage range." [Doc. #15-6, Pg ID 748-54]. Jelenik included a disclaimer that says "this is a vocational rehabilitation file review. I have not personally met with [Sun]. All records provided by the [United] were reviewed. My opinions are based on my education, training, and experience as a Rehabilitation Counselor and Vocational Expert and are within a reasonable degree of vocational certainty." *Id.*

In February 2013, United sent Sun a letter informing her it was terminating her LTD benefits effective April 6, 2013. It concluded Sun no longer met the Policy's disability requirements because she was not disabled under the "Any Gainful Occupation" requirement; specifically, United relied on Jellenik's opinion that Sun could perform sedentary work.

Sun appealed the termination of LTD benefits.

On April 9, 2013, Case Management Nurse Beth Baumer-Anderson agreed with United and denied Sun's appeal.

### III.    STANDARD OF REVIEW

#### a.  Summary Judgment

When reviewing cross-motions for summary judgment, the Court must assess each motion on its own merits. *Federal Ins. Co. v. Hartford Steam Boiler Insp. and Ins. Co.*, 415 F.3d 487, 493 (6th Cir. 2005).

The Court will grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movant has the initial burden to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant, who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. "The court must view the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Sagan v. U.S.*, 342 F.3d 493, 497 (6th Cir. 2003) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

Both parties must support their assertions "that a fact cannot be or is genuinely disputed" by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory

answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). Alternatively, either party may carry its burden by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B).

It is not enough for the nonmovant to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S. Ct. at 1356, 89 L. Ed. 2d 538 (1986). Rather, the nonmovant must sufficiently allege a fact that, if proven, "would have [the] effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties." *Midwest Media Prop., L.L.C. v. Symmes Twp., Ohio*, 503 F.3d 456, 469 (6th Cir. 2007) (alteration in original) (citation and internal quotation marks omitted). The non-movant cannot rely upon bare assertions, conclusory allegations, or suspicions to substantiate his claims. *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995). If the nonmoving party does not respond with specific facts showing a genuine issue for trial, summary judgment is appropriate. *Emmons v. McLaughlin*, 874 F.2d 351, 353 (6th Cir. 1989).

### b. Termination of LTD Benefits

Sun appeals United's decision to deny LTD benefits under ERISA § 1132(a)(1)(B). Sun says the Court should apply a *de novo* standard because the Policy does not grant discretionary review.

The Supreme Court ruled that "a denial of benefits challenged under § 1132(a)(1)(B) is reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to

construe the terms of the plan." *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).

"When applying a *de novo* standard in the ERISA context . . . [t]he [plan] administrator's decision is accorded no deference or presumption of correctness." *Hoover v. Provident Life & Acc. Ins. Co.,* 290 F.3d 801, 808-09 (6th Cir. 2006). The district court must take a "fresh look" at the administrative record. *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 619 (6th Cir. 2003). The Court is to conduct its review based "solely upon the administrative record," *id.,* and generally may not consider "evidence not presented to the plan administrator." *Perry v. Simplicity Eng'g*, 900 F.2d 963, 966 (6th Cir. 1990).

United says Sun's claim should be reviewed under an arbitrary and capricious standard as opposed to *de novo* standard because the language in the Policy grants the plan administrator discretion to determine eligibility for benefits.

While the Sixth Circuit does not require a plan to use the magic word "discretionary" to vest such authority in the entity deciding entitlement to benefits, e.g., *Johnson v. Eaton Corp.*, 970 F.2d 1569, 1572 n. 2 (6th Cir. 1992), it has consistently required "a clear grant of discretion" to that entity before replacing the *de novo* standard with the arbitrary and capricious standard. *Wulf v. Quantum Chemical Corp.*, 26 F.3d 1368, 1373 (6th Cir. 1994).

In *Yeager v. Reliance Std. Life Ins. Co.*, 88 F.3d 376, 381 (6th Cir.1996), the Sixth Circuit found that the phrase "submit satisfactory proof of total disability to us" constituted a clear grant of discretionary authority and held that the arbitrary and capricious standard of review applied. *See also Miller v. Metro Life Ins. Co.* 925 F.2d

11

979 (6th Cir. 1991) ( "'On the basis of medical evidence satisfactory to the Insurance Company' in the policy is a clear grant of discretion to the plan administrator.").

The Policy contains language similar to the *Yeager* policy. United relies on specific language in the Policy which says, "benefits will be paid after we receive acceptable proof of loss." [Doc. #15-1, Pg ID 112]. United says this language gives United discretion to decide whether the proof the claimant submits is acceptable before it pays monthly benefits. The language "acceptable" and "satisfactory" are similar.

The Court finds that the language in the Policy gives United discretion to determine Sun's eligibility for benefits. Accordingly, the Court reviews this case under the arbitrary and capricious standard.

Where the arbitrary and capricious standard applies, the reviewing court will examine whether the administrator's decision is supported by a reasoned explanation based on the evidence. *Univ. Hospitals of Cleveland v. Emerson Elec. Co*, 202 F3d 839, 846 (6th Cir. 2000).

IV.   **DISCUSSION**

a.   **United Arbitrarily and Capriciously Denied LTD Benefits to Sun**

The Sixth Circuit requires the party claiming LTD benefits under ERISA to prove entitlement to the claimed benefits by a preponderance of the evidence. *Javery v. Lucent Techs., Inc., Long Term Disability Plan for Mgmt. or LBA Employees.*, 741 F.3d 686, 701 (6th Cir. 2014). United says Sun fails to meet her burden.

The issue before the Court is whether United acted arbitrarily and capriciously when it denied Sun's claim for long-term disability insurance benefits. The parties provided the Court with a complete copy of the administrative record available to United

12

when it made the final decision to deny Sun's claim for plan benefits. To determine whether United's decision was arbitrary and capricious, the Court first will review the evidence in the administrative record.

On August 13, 2012, United reversed its initial determination that Sun was not disabled after receiving medical documentation from Dr. Benenati and speaking with him. On November 19, 2012, United informed Sun that the definition of disabled changed from "Regular Occupation to any Gainful Occupation." [Doc.#20, Pg ID 1049]. Between August and November 2012, there were no additional medical reports.

United continued to pay Sun LTD benefits under the Policy's new definition of disability. United received additional medical documents from Sun's treating physicians in December 2012, which listed Sun's continued physical restrictions.

In a February 26, 2013 letter, United informed Sun it was terminating her LTD benefits effective April 6, 2013:

> Your file was referred and reviewed by a Medical Consultant. The Medical Consultant opined that records indicate you would have continued restrictions to include no heavy lifting, pushing, pulling and carrying over 10 pounds. She is unable to perform prolonged standing, walking, climbing, squatting, crawling and kneeling. Additionally, current records do not indicate you would be precluded from lifting up to 10 pounds occasionally or less than 10 pounds frequently. Furthermore, records do not indicate you would be precluded from sitting up to 6 hours in an 8-hour workday. Despite these restrictions and limitations, you would have the ability to perform a sedentary strength demand occupation.
>
> A Transferable Skills Analysis ("TSA") was completed using the information you provided to us regarding your education, training and work experience. After reviewing all of your information, we concluded that you have the transferable skills necessary to perform Gainful Occupation of a sedentary strength demand.
> ….

> In summary, the medical documentation fails to substantiate a condition or conditions that would render you disabled from performing a Gainful Occupation of a sedentary strength demand.

[Doc. 15-2, Pg ID 272-75].

United does not identify who the Medical Consultant is or who wrote the TSA report that it based its decision on, but the above summary is the verbatim conclusion Jellenik reached in her February 13, 2013 TSA report. [Doc. #15-6; Pg ID 748-54]. Jellenik based her conclusion on the same records United did in its February 26, 2013 letter. She never treated or examined Sun. Furthermore, in the February 26 letter, United does not mention the findings from Sun's treating physicians who reached the opposite conclusion.

Jellenik's findings are not supported by a reasoned explanation based on the evidence.

> Sedentary work is defined by the Department of Labor as exerting up to 10 pounds of force occasionally (Occasional: activity or condition up to 1/3 of the time) and/or negligible amount of force frequently (Frequent: activity or condition exists 1/3 to 2/3 of the time) to lift, carry, push, pull or otherwise move objects, including the human body. Sedentary work involves sitting, most of the time, but may involve walking or standing for brief periods of time. Occupations are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met.

[Doc. #15-2; Pg ID 273].

United defines frequently as 34%-66% of an 8-hour workday. United says "our review of the file does not find support for restrictions or limitations which would prevent [Sun] from performing the material duties of a sedentary occupation from April 6, 2013, and ongoing."

However, when Drs. Benenati and Sulich's reports are read together, they say that Sun cannot perform sedentary or light work on a sustained basis; Sun cannot sit,

stand, or walk for longer than 1 hour in an 8-hour workday or 30 minutes at a time; cannot do repetitive movements with her arms, hands, feet, or legs; cannot climb ladders, kneel, crouch, stoop, crawl, or squat. But, Sun can occasionally lift up to 10 pounds, climb stairs, reach overhead, reach forward, and bend. [*Id.*, Pg ID 354-59].

These reports are in direct contradiction to United's findings that Sun can sit for 6 hours in an 8-hour workday and that she can lift less than 10 pounds frequently. United does not reach a reasoned conclusion; both of Sun's treating physicians found significant restrictions in her ability to sit, stand, and walk for prolonged periods. Sun's medical records do not support United's findings.

Sun appealed United's denial of her claim for LTD benefits. In United's April 9, 2013 letter to Sun, it explained its reason for denial of the LTD benefits:

> In summary, we agree you were impaired and not able to perform the material duties of your occupation as a Registered Nurse for a period of time beginning December 29, 2010. The medical evidence supports restrictions and limitations through April 5, 2013. Our review of the file does not find support for restrictions or limitations which would prevent you from performing the material duties of a sedentary occupation from April 6, 2013, and ongoing. Based on your educational background and experience, you are able to meet gainful employment. Therefore, the denial of continued benefits was appropriate and the decision is being upheld.

[*Id.*, Pg ID 244-47].

The administrative record does not support United's findings that Sun can perform sedentary work and is not disabled. United ignores findings from Sun's treating physicians that show Sun is disabled, and instead "cherry-picks" the opinion of Jellenik – a non-examining, vocational consultant – to find evidence that supports a conclusion in their favor. *See Spangler v. Lockhead Martin Energy Systems, Inc.*, 313 F.3d 356, 362 (6th Cir. 2002) (finding the defendant's decision to terminate LTD benefits "arbitrary

and capricious" where it ignored unfavorable medical evidence and relied on "cherry-picked" evidence that was favorable).

Although United is not required to give treating doctors' findings deferential weight, United must give them due consideration and have good reasons to reject their opinions. *Elliot v. Metro. Life. Ins. Co.*, 473 F.3d 613, 620-21 (6th Cir. 2006). While United did mention parts of Dr. Benenati's and Dr. Sulich's evaluations, they failed to provide good reasons for adopting a non-examining vocational consultant's opinion over Sun's treating physicians.

In its brief, United explains its reason for denying Sun's LTD benefits:

> United disputes [Sun's] apparent position that she is totally and permanently disabled from performing even identified sedentary jobs which would allow for reasonable restrictions with regard to her medical conditions. United notes that Dr. Sulich, [Sun's] rheumatologist, as of December 17, 2012, stated that [Sun] had not achieved maximum medical improvement, that fundamental changes in [Sun's] medical condition could be expected in more than six months; that his prognosis for recovery was "Improved function as course of treatment of Benlysta is continued to steroid decreased'. The SSA Decision similarly concluded that 'Medical Improvement is expected with appropriate treatment. Consequently, a continuing disability review is recommended in 24 months." On February 1, 2012, [Sun] answered the question "What is your employment goal?" with the hopeful response "to Return to work as an RN in a non patient care role." [Sun] has not proved by a preponderance of the evidence that she cannot return to work as an RN in a non patient care role.

[Doc. #18, Pg ID 1021].

United's decision to terminate LTD benefits based on an expectation or goal of improvement, while failing to provide good reasons for rejecting the opinions of Sun's treating providers – is arbitrary and capricious. United does not cite any cases which support its position that an expectation or goal for improvement in one's condition, means a plaintiff is not disabled. Using that rationale here is unsupported, especially

16

where reports by Sun's treating providers contradict such a finding, and there is no evidence showing that Sun actually was improved to a point where she could perform work on a sustained basis as required.

United says, "the SSA Decision similarly concluded that 'Medical Improvement is expected with appropriate treatment." [Doc. #18, Pg ID 1021]. United reliance on aspirational language in the SSA's decision is without merit; the SSA also gave great weight to Sun's treating physicians and found Sun suffers from severe impairments that render her disabled from performing 'gainful employment.' [Doc. #15.2, Pg ID 238-42].

United based its conclusions on aspirational language in medical reports, Sun's goals, and medical consultants who did not treat or examine Sun, despite ample evidence of disability based on examinations and findings. This leads this Court to conclude that United's decision to terminate Sun's LTD benefits was arbitrary and capricious. *See Spangler*, 313 F.3d at 362; *Evans v. Unumprovident Corp.*, 434 F.3d 866, 877 (6th Cir. 2006) ("[A] plan administrator may not arbitrarily disregard reliable medical evidence proffered by a claimant, including the opinions of a treating physician.").

The Court finds by a preponderance of evidence that Sun is entitled to the LTD benefits.

### b. Relief

Sun argues that the Court should award her costs, attorney's fees, and interest. Sun does not cite cases or provide argument. Furthermore, she fails to provide any guidance to the Court on calculation of interest.

The Court directs the parties to attempt to stipulate to a judgment amount which addresses these requests. Short of that, the parties will need to brief these issues.

### c.  Repayment for Alleged Overpayment of Benefits

In addition to the dispute over whether United properly terminated Sun's LTD benefits, United asserts a counter-claim against Sun, seeking repayment of funds paid under the disability insurance policy. United says the Policy provided that any Social Security income is deductible from the policy disability payments.

United demands $25,476.67 for retroactive social security payments. Sun has not made reimbursement payments to United. The parties dispute that under the Policy, social security payments are deductible from any award of disability payments.

Sun says if the Court finds she is disabled, she is entitled to retain the $25,476.67. Sun does not cite cases or provide reasoning. Furthermore, in Sun's response, she does not address any of United's arguments. Sun does not dispute she received the money from the SSA, the amount of overpayment, or that she signed an agreement to reimburse United for any LTD benefits from other sources.

The Court **GRANTS** United's motion for summary judgment on its counterclaim. Sun must reimburse United $25,476.67.

## V.  CONCLUSION

The Court finds by a preponderance of the evidence that Sun is disabled and entitled to LTD benefits, and that United's decision to terminate LTD benefits was arbitrary and capricious. United's decision is **REVERSED**. Sun is entitled to benefits from April 6, 2013 to the date of judgment. A stipulated judgment or Plaintiff's supplemental brief is due on July 27, 2017.

The Court **GRANTS** Plaintiff's motion for summary judgment and **GRANTS IN PART** and **DENIES IN PART** Defendant's motion for summary judgment.

**IT IS ORDERED**.


S/Victoria A. Roberts
United States District Judge

Dated:  July 19, 2017

19